United States District Court
Southern District of Texas
**ENTERED**
November 30, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

JONNIE BYRD,                          §
                                      §
                                      §
            Plaintiff,                §
                                      §
      vs.                             §          5:17-CV-209
                                      §
LIBERTY INSURANCE CORPORATION,        §
                                      §
                                      §
            Defendant.                §
                                      §

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

The Magistrate Court submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b)(3).  This case has been referred, by order of the District Court, to the United States Magistrate Judge for an evaluation of the Defendant's Motion for Summary Judgment (Dkt. No. 16) under 28 U.S.C. § 1915(e)(2)(B).  After considering the Defendant's Motion, Plaintiff's Response, and Defendant's Reply (Dkt. Nos. 16, 17, 18), the facts of this case, and the applicable law, the Court finds that Defendant's full and timely payment of the appraisal award precludes Plaintiff's claims as a matter of law and that there are no genuine issues as to any material fact.  Accordingly, the undersigned **RECOMMENDS** that the District Court, after an independent and *de novo* review of the record, **GRANT** the Defendant's Opposed Motion for Summary Judgment. (Dkt. No. 16).

## I.      Background

Following a hail storm in May 2017, Plaintiff Jonnie Byrd and his wife made a homeowner's insurance claim for damage to the roof and interior of their dwelling to Defendant Liberty Insurance Corporation ("Liberty") on June 6, 2017.  (Dkt. No. 1-1 at 8; Dkt. No. 17 at 2).

1

A field examiner for Liberty inspected the Byrds' property on June 15, 2017 and found no hail damage to the roof but did find interior water damage.  (Dkt. No. 16-1 at 1-2).  The examiner estimated that the replacement cost for the interior water damage did not exceed Plaintiff's deductible of $3,483.00, so no payment was issued.  (Dkt. No. 16-1 at 1-2, 68; Dkt. No. 17 at 2).  Following the claim denial, Plaintiff sent a demand letter seeking $55,731.36.  (Dkt. No. 16-1 at 1-2).  Liberty attempted to follow up with Plaintiff to resolve the dispute, but after receiving no further communications closed the file on July 31, 2017.  *Id.*  On August 11, 2017, Plaintiff sued Liberty in state court for breach of contract, unfair settlement practices and failure to pay promptly in violation of the Texas Insurance Code, and breach of the common law duty of good faith and fair dealing.  (Dkt. No. 1-1 at 11-14).

On October 12, 2017, Liberty removed the case to federal court on the ground of state diversity between the Parties.[1]  (Dkt. No. 1).  Subsequently, on February 8, 2018, Liberty invoked its right under the terms of Plaintiff's insurance policy to appraise the amount of loss.  (Dkt. No. 16-1 at 24, 69-70).  At Plaintiff's request, the Court stayed the case pending the outcome of the appraisal process.  (Dkt. Nos. 13, 14).  In June 2018, the appraisers chosen by the Parties agreed upon an award amount of $13,332.44.  (Dkt. No. 16-1 at 74).  Liberty issued payment, minus Plaintiff's deductible, on July 6, 2018.  *Id.* at 72-74.  Having paid the appraisal award, Liberty now seeks summary judgment arguing that "timely payment of a valid appraisal award resolved all of Plaintiff's claims against Liberty."  (Dkt. No. 16 at 4).  Plaintiff counters that payment of the appraisal award does not give Liberty "absolute immunity from any damages, including damages that pre-dated the appraisal process entirely."  (Dkt. No. 17 at 1).

---

[1] Plaintiff made a Motion for Remand based on the theory that Levi Quiroz, the field examiner and claims adjuster for Defendant, was a properly joined non-diverse defendant.  (Dkt. No. 10 at 3).  The District Court dismissed the motion because Plaintiff failed to state a claim against Mr. Quiroz.  (Dkt. No. 12 at 12).

## II.    Legal Standard

In a motion for summary judgment the evidence is viewed in the light most favorable to the nonmovant. *Smith v. Brenoettsy,* 158 F.3d 908, 911 (5th Cir. 1998). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). "The moving party bears the burden of showing the district court that there is an absence of evidence to support the nonmoving party's case." *Kee v. City of Rowlett, Tex.*, 247 F.3d 206, 210–11 (5th Cir. 2001). If the movant meets this burden, the nonmovant must then go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. *Id.* (quoting *Tubacex, Inc. v. M/V Risan,* 45 F.3d 951, 954 (5th Cir. 1995)). "A dispute over a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' The substantive law determines which facts are material." *Id.* (internal citations omitted). Lastly, "unsubstantiated or conclusory assertions that a fact issue exists will not suffice." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

Because this case was removed from a Texas court through diversity of citizenship, it is our duty to "apply as their rules of decision the law of the state, unwritten as well as written." *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 73 (1938). "Under the *Erie* doctrine, [courts] are bound in diversity cases to apply the substantive law of the forum state as interpreted by the state's highest court." *Am. Nat. Gen. Ins. Co. v. Ryan,* 274 F.3d 319, 328 (5th Cir. 2001) (citing *Ladue v. Chevron U.S.A., Inc.* 920 F.2d 272, 274 (5th Cir. 1991)). "[T]he decisions of intermediate appellate state courts, which provide a datum for ascertaining state law which is not to be

3

disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018) (internal alterations and citations omitted).

## III.   Analysis

The Parties agree that Plaintiff's insurance policy has an appraisal provision, and that Liberty invoked its contractual right to appraisal after the Parties failed to agree on the amount of loss.  (Dkt. No. 16-1 at 69-70; Dkt. No. 13).   The disagreement—and the focus of Liberty's motion for summary judgment—is about the effect of the appraisal award.  (Dkt. No. 16 at 4; Dkt. No. 17 at 1).   "Appraisal clauses, commonly found in homeowners, automobile, and property policies in Texas, provide a means to resolve disputes about the amount of loss for a covered claim. These clauses are generally enforceable, absent illegality or waiver."   *In re Universal Underwriters of Texas Ins. Co.*, 345 S.W.3d 404, 406–07 (Tex. 2011) (internal citations omitted).    Appraisals are a fixture of Texas insurance practice because they "can provide a less expensive, more efficient alternative to litigation" and generally proceed with little judicial oversight.  *Id.*   "From a policy point of view, appraisal clauses allow the insured and insurer to resolve disputes about damages with greater efficiency by eliminating the cost and delay of traditional litigation."  *Zhu v. First Cmty. Ins. Co.*, 543 S.W.3d 428, 433 (Tex. App. – Houston [14th  Dist.] 2018).

In the absence of fraud, accident, or mistake, "[a]ppraisal awards made pursuant to the provisions of an insurance contract are binding and enforceable."  *Garcia v. Lloyds*, 514 S.W.3d 257, 264 (Tex. App. – San Antonio 2016) (citing *Providence Lloyds Ins. Co. v. Crystal City Indep. Sch. Dist.*, 877 S.W.2d 872, 875 (Tex. App. – San Antonio 1994)); *see also Barnes v. W. All. Ins. Co.*, 844 S.W.2d 264, 267 (Tex. App. – Fort Worth 1992) ("Every reasonable

presumption will be indulged to sustain an appraisal award, and the burden of proof lies on the party seeking to avoid the award."). "The effect of an appraisal provision is to estop one party from contesting the issue of damages in a suit on the insurance contract, leaving only the question of liability for the court." *Franco v. Slavonic Mut. Fire Ins. Ass'n*, 154 S.W.3d 777, 786 (Tex. App. – Houston [14th Dist.] 2004) (internal citation omitted). Thus, "[u]nder Texas law, when an insurer makes timely payment of a binding and enforceable appraisal award, and the insured accepts the payment, the insured is 'estopped by the appraisal award from maintaining a breach of contract claim.'" *Blum's Furniture Co. v. Certain Underwriters at Lloyds London*, 459 F. App'x 366, 368 (5th Cir. 2012) (citing *Franco*, 154 S.W.3d at 787).

Furthermore, in Texas plaintiffs "may not use the fact that the appraisal award was different than the amount originally paid as evidence of breach of contract, especially when the contract they claim is being breached provides for resolution of disputes through appraisal." *Breshears v. State Farm Lloyds*, 155 S.W.3d 340, 343 (Tex. App. – Corpus Christi 2004). This is to "prevent the insured from taking advantage of the binding appraisal process to determine the value of its claim and then, after the insurer fully pays the appraisal award, suing the insurer for its initial failure to pay." *Garcia*, 514 S.W.3d at 273.

Applying Texas substantive law and viewing the evidence in the light most favorable to Plaintiff, we turn to whether there is a genuine issue as to any material fact and whether Liberty is entitled to judgment as a matter of law.

### A. **Breach of Contract Claim**

On June 16, 2017, Liberty refused Plaintiff's insurance claim on the grounds that it did not exceed the deductible. (Dkt. No. 16-1 at 1, 68). Plaintiff argues this decision was a "material breach of the policy" as "Liberty wrongfully denied the claim from the outset." (Dkt.

No. 17 at 10).  Plaintiff argues that Liberty "failed to perform its contractual duties to adequately compensate Plaintiff under the terms of the Policy;" and therefore "breached the contract by refusing to perform its obligations under the terms of the Policy and pursuant to Texas Law." (Dkt. No. 1-1 at 9, 11).  On the contrary, Liberty asserts that "compliance with the appraisal process [outlined in the insurance contract] and prompt payment of the [award] means that Liberty cannot be in breach of contract" as a matter of law.  (Dkt. No. 16 at 5).   In Liberty's view any breach of contract claim would have been settled by payment of the appraisal award in July 2018. *Id.*

When an insurer participates in the appraisal process and timely pays the award set by the Parties' chosen appraisers, the insurer has "complied with every requirement of the contract, it cannot be found to be in breach."  *Breshears,* 155 S.W.3d at 344.  Thus, a plaintiff is estopped from maintaining a breach of contract suit when the defendant can show:

>    (1) the existence and enforceability of an appraisal award;
>    (2) the timely payment of the award [by the insurer]; and
>    (3) the acceptance of the appraisal award.

*United Neurology, P.A. v. Hartford Lloyd's Ins. Co.*, 101 F. Supp. 3d 584, 598 (S.D. Tex. 2015) (citing *Gabriel v. Allstate Texas Lloyds,* No. 7:13–CV–181, 2013 WL 7885700, at *3 (S.D. Tex. Nov. 1, 2013)).  The result, as the Fifth Circuit remarked in *Blum's Furniture Co.*, is that "[u]nder Texas law when an insurer makes timely payment of a binding and enforceable appraisal award, and the insured accepts the payment, the insured is estopped by the appraisal award from maintaining a breach of contract claim against [the insurer]."  459 Fed. App'x. at 368.

In the present case, a binding and undisputed appraisal award was tendered to Plaintiff within a month of the appraisers' agreement.  (Dkt. No. 16-1 at 2-3, 74).  Plaintiff has not sought to set aside the appraisal award or raised a fact issue which would justify this remedy.  (Dkt. No.

17).  Nowhere does Plaintiff allege fraud, accident, or mistake regarding the appraisal award, so the Court is obliged to treat it as valid.  *Garcia*, 514 S.W.3d at 264.  The rule in Texas is that:

> If no party asserts a ground for setting aside the appraisal award, the appraisal award binds the parties as to the amount of loss, and the insurer's tender of the amount owed based on the amount of the loss in the appraisal award estops the insured from bringing a breach-of-contract claim against the insurer.

*Zhu*, 543 S.W.3d at 433-34; *see also Nat'l Sec. Fire & Cas. Co. v. Hurst*, 523 S.W.3d 840, 844 (Tex. App. – Houston [14th  Dist.] 2017).  Although Plaintiff attempts to create fact issues by highlighting the difference between Liberty's initial estimate and the appraisal award as evidence of Defendant's wrongful denial of Plaintiff's claim, "Texas law clearly holds the discrepancy between the initial estimate and the appraisal award cannot be used as breach of contract," since the very contract that is claimed to be in breach provides for resolution of disputes through appraisal.  *Garcia*, 514 S.W.3d at 273 (internal citations omitted); (Dkt. No. 16-1 at 24).  The Texas Court of Appeals in *Garcia* explained that "[t]he reason for this defense is to prevent the insured from taking advantage of the binding appraisal process to determine the value of its claim and then, after the insurer fully pays the appraisal award, suing the insurer for its initial failure to pay."  *Id*.  Therefore, Plaintiff is estopped from pursuing a breach of contract claim against Liberty, and Liberty is entitled to summary judgment because of its full and timely tender of the appraisal award payment in July 2018.  (Dkt. No. 16-1 at 74-75).

### B.  Extra-contractual Claims

Liberty also seeks summary judgment on Plaintiff's extra-contractual claims, contending that they are likewise precluded by the appraisal award payment.  Plaintiff claims that Liberty "breached the common law duty of good faith and fair dealing owed to Plaintiff by denying or delaying payment on the Claim when Defendant Liberty Mutual knew or should have known that its liability to Plaintiff was reasonably clear" from the initial inspection by its employee on June

15, 2017.  (Dkt. Nos. 1-1 at 14; Dkt. No. 16-1 at 1).  Furthermore, Plaintiff claims that this conduct constituted a material misrepresentation and failure to conduct a reasonable claim investigation in violation of Texas Insurance Code Ann. § 541.060 (West 2005).  (Dkt. No. 17 at 3-5; Dkt. No. 1-1 at 16-17).  Liberty moves for summary judgment on these claims because they "do not survive after timely payment of an appraisal award because tender of the award negates the breach of contract claim that is a predicate for extra-contractual liability."  (Dkt. No. 16 at 6).

Based upon the summary judgment evidence, Plaintiff has not shown how his extra-contractual claims can prevail after timely payment of the appraisal award.  As summarized recently by a sister court,

> Generally, under Texas law, 'because timely and full payment of an appraisal award precludes a breach of contract claim, extra-contractual claims for fraud, bad faith, and violations of the DTPA and Texas Insurance Code also fail.' However, an extra-contractual claim may proceed if the alleged 'statutory violation or bad faith . . . cause[s] an injury that is independent from the loss of benefits.'  For an extra-contractual claim to proceed, the independent injury must be one that does not 'flow or stem from the denial of policy benefits.  Recently, . . . the Texas Supreme Court recognized that such an independent-injury claim 'would be rare, and we in fact have yet to encounter one.'

*Jimenez v. Liberty Ins. Corp*., No. CV H-16-1866, 2017 WL 6368663, at *5 (S.D. Tex. Nov. 9, 2017) (internal citations omitted).

Liberty's pre-appraisal conduct was neither extreme nor the cause of any injury independent of Plaintiff's right to receive policy benefits as to be an exception to the general rule.  Plaintiff complains that Liberty acted in bad faith in denying and delaying payment of his covered property loss as shown by the payment of the appraisal award that was "three times" more than Liberty's initial evaluation.  (Dkt. No. 17 at 14; Dkt. No. 16-1 at 68, 74).  However, such a discrepancy between the initial claim evaluation and the final appraisal award will not defeat Liberty's motion for summary judgment when courts have found much larger differences

insufficient.  *See*, *e.g.*, *JM Walker LLC v. Acadia Ins. Co.*, 356 F. App'x 744, 746 (5th Cir. 2009) (ruling for insurer, despite initial estimate that damages were below the $5,000.00 deductible while the final appraisal award was for $423,053.96); *Mag-Dolphus, Inc. v. Ohio Cas. Ins. Co.*, 906 F. Supp. 2d 642, 644-45 (S.D. Tex. 2012) (deciding in favor of insurer, despite initial estimate of $40,331.48 while final appraisal award was for $191,594.16).  Moreover, Plaintiff's own initial demand was for $55,731.36, over five times higher than the appraisal award after subtraction of the deductible.  (Dkt. No. 16-1 at 2, 75).  Plaintiff also points to Liberty's field examiner finding no damage to the property's roof, but documenting interior water damages. (Dkt. No. 17 at 2).  Plaintiff argues that this finding was counterintuitive and evidence of bad faith.  (Dkt. No. 10 at 19).  However, this evidence at most only shows Liberty "was merely incorrect about the factual basis for its denial of the claim."  *Garcia*, 514 S.W.3d at 276. "Evidence that merely shows a bona fide dispute about the insurer's liability on the contract does not rise to the level of bad faith."  *Id*. at 276 (internal citations omitted).  Moreover, "[a] simple disagreement among experts about whether the cause of the loss is one covered by the policy will not support a judgment for bad faith."  *Id*. at 277; *see also Lyons v. Millers Cas. Ins. Co. of Texas*, 866 S.W.2d 597, 601 (Tex. 1993) (holding that reasonableness of insurer's conduct decides bad faith, not whether a claim is valid); *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998) (ruling that a *bona fide* coverage dispute does not demonstrate bad faith); *Hurst*, 523 S.W.3d at 848 (deciding that a disagreement over amount plaintiff was entitled to receive under the policy was not an extreme act).

Plaintiff's extra-contractual claims for economic damages and mental anguish are also predicated on his right to receive policy benefits rather than independent from it.  (Dkt. No. 1-1 at 17).  Even assuming *arguendo* a factual issue as to the viability of Plaintiff's extra-contractual

claims, "[t]o recover any damages beyond policy benefits for [Chapter 541 claims and claims for breach of the duty of good faith and fair dealing], the 'statutory violation or bad faith must cause an injury that is independent from the loss of benefits.'"  *Old Am. Ins. Co. v. Lincoln Factoring, LLC*, No. 02-17-00186-CV, 2018 WL 5832111, at *5 (Tex. App. – Fort Worth Nov. 8, 2018) (internal alterations and citations omitted); *see USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 500 (Tex. 2018) ("[A]n insurer's statutory violation does not permit the insured to recover *any* damages beyond policy benefits unless the violation causes an injury that is independent from the loss of the benefits."); *Hallak v. Allstate Vehicle & Prop. Ins. Co.*, No. 4:17-CV-00237-O-BP, 2017 WL 4182198, at *3 (N.D. Tex. Aug. 29, 2017) (finding *Menchaca* upholds independent injury rule, meaning that extra-contractual claims may proceed only if they do not originate from the denial of policy benefits).  Plaintiff asserts that he suffered "additional costs, economic hardship, [and] losses due to nonpayment of the amount owed," but points to no evidence in the record other than restating the "incredibly delayed timeline" of "[n]early 2 years"—when actually it was a little over a year[2]—between the initial claim examination and payment of the appraisal award.  (Dkt. No. 1-1 at 17; Dkt. No. 17 at 10).  Likewise, the record is devoid of any indication showing the "nature, duration, and severity of [Plaintiff's] mental anguish, thus establishing a substantial disruption in the plaintiffs' daily routine," caused by Liberty's pre-appraisal conduct.  *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995); (Dkt. No. 1-1 at 16).  Furthermore, "an insured cannot recover damages for emotional distress caused by a mere denial of policy benefits because (1) the entitled-to-benefits rule does not provide for the recovery of such damages, and (2) the second aspect of the independent-injury

---

[2] Plaintiff's Response (Dkt. No. 17) confuses the timeline numerous times.  Plaintiff claims that the appraisal award was only given two years after the initial denial.  *Id*. at 3, 8, 10.  Additionally, Plaintiff describes the appraisal award as coming "nearly 4-years after the initial loss, nearly 3-years after the last partial payment."  *Id*. at 9. 10.  The correct timeline is that the claim was denied on June 16, 2017 and the appraisal award was signed on June 14, 2018, leading to an approximately a one-year delay.  (Dkt. No. 16-1 at 68, 72).

rule precludes such recovery." *Lyda Swinerton Builders, Inc. v. Oklahoma Sur. Co*., 903 F.3d 435, 452 (5th Cir. 2018).

Plaintiff argues that under the recent Texas Supreme Court case of *USAA Texas Lloyds Co. v. Menchaca*, "[a]ppraisal is not a 'get out of jail free' card" and its holding "casts aside the independent-injury rule." (Dkt. No. 17 at 4, 6).[3]  Plaintiff bases his arguments on the second rule about the relationship between breach of contract claims under an insurance policy and extra-contractual claims restated in *Menchaca*.[4]  This rule states that "an insured who establishes a right to receive benefits under an insurance policy can recover those benefits as 'actual damages' under the statute if the insurer's statutory violation causes the loss of the benefits." *Menchaca*, 545 S.W.3d at 495.  Plaintiff argues that "[i]n the present case, the uncontroverted summary judgment evidence plainly establishes that Plaintiff was entitled to Policy benefits after the appraisal process was completed.  Under *Menchaca*, the only remaining question is whether Defendant's actions caused Mr. Byrd to lose those benefits." (Dkt. No. 17 at 7).

However, this interpretation of *Menchaca*'s so called entitlement-to-benefits rule has been rejected by the courts.  *Menchaca* did not involve payment of an appraisal award and has not changed long-established Texas law on the effect of full and timely payment of an appraisal award. *See Chavez v. State Farm Lloyds*, No. 17-40861, 2018 WL 3934849, (5th Cir. August 15,

---

[3] Plaintiff cites *Aldous v. Darwin Nat'l Assurance Co.*, for the proposition that the Texas Supreme Court "repudiated the independent-injury rule." 889 F.3d 798, 799 (5th Cir. 2018).  However, *Aldous* is distinguishable because it did not deal with the effect of an appraisal award in an insurance dispute.  *Id.*  In fact, "[t]he independent injury rule is alive and well." *Turner v. Peerless Indem. Ins. Co.*, No. 07-17-00279-CV, 2018 WL 2709489, at *4 (Tex. App. – Amarillo June 5, 2018) (rejecting the argument that *Menchaca* overturned the independent injury rule). Furthermore, the Fifth Circuit Court of Appeals continues to use the independent injury rule, even after its decision in *Aldous*, when ruling on insurance disputes.  *See Moore v. Allstate Texas Lloyd's*, No. 17-10904, 2018 WL 3492818, at *2-3 (5th Cir. July 19, 2018) (rejecting plaintiff's argument that *Menchaca* allows extracontractual claims absent an independent injury or showing under entitled-to-benefits rule); *Lyda*, 903 F.3d at 451-53 (applying *Menchaca* while explaining the distinctions between the entitled-to-benefits and independent injury rules in the summary judgment context).

[4] The *Mechaca* decision was first published in April 2017.  *USAA Texas Lloyds Co. v. Menchaca*, No. 14-0721, 2017 WL 1311752 (Tex. Apr. 7, 2017).  This version was later withdrawn on procedural grounds, but the Texas Supreme Court "unanimously reaffirm[ed] the legal principles and rules announced in that opinion" in its revised opinion.  *Menchaca*, 545 S.W.3d at 484.

2018) (affirming district court's grant of summary judgment for insurer on non-contractual claims because *Menchaca* merely clarified when an insured who has proven bad faith can recover damages but did not change the standard of proof); *Losciale v. State Farm Lloyds*, No. CV 4-17-0016, 2017 WL 3008642, at *2 (S.D. Tex. July 14, 2017) (disagreeing with plaintiff's reading of *Menchaca* as overruling the vast body of legal authority on the effect of payment of appraisal award); *see also Krahmer v. State Farm Lloyds*, No. 7:17-CV-15, 2017 WL 5075666, at *3 (S.D. Tex. Sept. 14, 2017) ("This Court agrees with a sister court that the recent Texas Supreme Court decision in *Menchaca* 'does not purport to alter the long-standing case law regarding the effect of full and timely payment of an appraisal award'" (internal citation omitted)); *Carroll v. State Farm Lloyds*, No. CV H-16-1626, 2017 WL 2999681, at *3 (S.D. Tex. June 28, 2017) (concluding that *Menchaca* "does not purport to alter the long-standing case law regarding the effect of full and timely payment of an appraisal award" and finding such claims precluded by full and timely payment of appraisal award).

Here, Plaintiff overlooks that the policy benefits to which he alleges entitlement were already recovered through the timely and full payment of the appraisal award, so the second rule of *Menchac*a is inapplicable because there are presently no lost benefits.  (Dkt. No. 16-1 at 74-75).  All of the Federal and Texas State courts that have grappled with Plaintiff's argument in the aftermath of *Menchaca* have reached this conclusion.  In *Losciale*, the plaintiff sued the insurer for violations of the insurance code, arguing that *Menchaca*'s clarification of the rules had "'overruled' the vast legal authority regarding the effect of full and timely payment of an appraisal award."  2017 WL 3008642, at *2.  The District Court disagreed and granted summary judgment for the insurer by holding that "[t]he Court finds that none [of the rules] apply in this case given State Farm's full and timely payment of the appraisal award.  The payment of the

appraisal award satisfies Plaintiff's right to receive benefits under the Policy and, therefore, there is no 'loss of benefits.'" *Id.* at *3. Similarly, in *Carroll*, the District Court also found that a plaintiff's reliance on the rules summarized in *Menchaca* was misplaced:

> [G]iven State Farm's full and timely payment of the appraisal award. The payment of the appraisal award satisfies Plaintiff's right to receive benefits under the Policy and, therefore, there is no 'loss of benefits.' Plaintiff has not identified nor presented evidence of an independent loss that does not flow or stem from the original denial of policy benefits. As a result, *Menchaca* does not allow Plaintiff to pursue her breach of contract and extra-contractual claims following full and timely payment of the appraisal award.

2017 WL 2999681 at *3; *see also Krahmer*, 2017 WL 5075666, at *3 (agreeing with *Losciale*, 2017 WL 3008642, at *3, that *Menchaca* does not purport to alter longstanding case on effect of full and timely payment of appraisal award and finding claims of breach of contract precluded). Particularly, at least one district court has rejected Plaintiff's argument that a showing of independent injury is not necessary under *Menchaca*'s entitled-to-benefits rule: "However, *Menchaca* did not involve the payment of an appraisal award. When, an appraisal award is timely paid, an insured's right to receive policy benefits is satisfied and, therefore, there is no loss of benefits." *Jimenez*, 2017 WL 6368663, at *5 (quoting *Losciale*, 2017 WL 3008642, at *3) (internal quotations omitted).

Texas State Courts have also reached the same conclusion applying the rationale of *Losciale*.[5] Likewise, in *Ortiz v. State Farm Lloyds*, No. 04-17-00252-CV, 2017 WL 5162315, (Tex. App. – San Antonio Nov. 8, 2017), a petitioner to the San Antonio Court of Appeals asked the court to revisit the law on the effect of an insurer's payment of an appraisal award on an insured's contractual and extra-contractual claims in light of *Menchaca*. Just as Plaintiff argues

---

[5] *Losciale* is based on an earlier Texas Court of Appeals' decision in *Hurst* that: "It is undisputed that [plaintiff] had a right to receive benefits under the insurance policy, and we have held that he received those benefits in the form of [defendant]'s initial payment and subsequent tender of the appraisal award. In order to recover any damages beyond policy benefits, the statutory violation or bad faith must cause an injury that is independent from the loss of benefits." 523 S.W.3d at 848. The Appellate Court then ruled in favor of the insurance company. *Id.* at 849.

in this case, the petitioner in *Ortiz* claimed that under *Menchaca* extra-contractual claims can be proven without a corresponding breach of contract claim. *Id*. at *2. The Court of Appeals began by noting that "*Menchaca* is not a case involving payment of an appraisal award." *Id*. (citing *Losciale*, 2017 WL 3008642, at *2). Moreover, as to any claims that the petitioner could recover actual damages under the entitled-to-benefits rule, "the payment of the appraisal award satisfied Ortiz's right to receive benefits under his policy and, therefore, there is no loss of benefits or loss of a contractual right to policy benefits." *Id*. at *3 (internal alternations and quotations omitted); *accord Wellington Ins. Co. v. Banuelos*, No. 04-17-00365-CV, 2018 WL 626534, (Tex. App. – San Antonio Jan. 31, 2018) (distinguishing *Menchaca* because it did not involve payment of an appraisal award, and concluding that nothing in its clarification of the rules governing relationship between contractual and extra-contractual claims in insurance context required revisiting precedent or reversing summary judgment in favor of insurer); *Lazos v. State Farm Lloyds*, No. 04-17-00286-CV, 2018 WL 521585, (Tex. App. – San Antonio Jan. 24, 2018); *Alvarez v. State Farm Lloyds*, No. 04-17-00251-CV, 2018 WL 340135, (Tex. App. – San Antonio Jan. 10, 2018).

Both Texas State and Federal Courts have reached the same conclusion on the application of the second rule in *Menchac*a. In sum, the right to sue to recover lost policy benefits ends when those benefits are recovered. Plaintiff cites no case supporting his interpretation of *Menchaca* in the context of an appraisal award. (Dkt. No. 17). Moreover, Plaintiff's interpretation is contrary to Texas State Courts' longstanding precedents on the effect of a valid appraisal award; this body of law remains unchanged by *Menchaca*. As no injury independent from the loss of policy benefits has been alleged, Liberty's motion for summary judgment should be granted and Plaintiff's extra-contractual claims be dismissed.

C. **Plaintiff's Prompt Payment Claim**

Lastly, Plaintiff seeks damages for the delay in payment of policy benefits. (Dkt. No. 1-1 at 16-17). The Texas Prompt Payment of Claims Act requires insurers to pay claims within sixty (60) days after receiving the necessary documents giving notice. Tex. Ins. Code Ann. § 542.058 (West 2009). Late payments are penalized through the charge of an 18% annual interest rate, plus attorney's fees. Tex. Ins. Code Ann. § 542.060 (West 2017).

Plaintiff argues that since the appraisal process was completed a little over a year after the claim was submitted, a period lasting from June 6, 2017 to June 28, 2018, Defendant must "pay penalties, interest and attorney's fees to Mr. Byrd for its initial and admitted underpayment of Plaintiff's Claim." (Dkt. No. 16-1 at 1, 3; Dkt. No. 17 at 11-12). To secure a prompt payment penalty under Texas law a plaintiff must show that:

> (1) a claim was made under an insurance policy,
> (2) the insurer is liable for the claim, and
> (3) the insurer failed to follow one or more sections of the prompt-payment statute with respect to the claim.

*United Nat. Ins. Co. v. AMJ Investments, LLC*, 447 S.W.3d 1, 13 (Tex. App. – Houston [14th Dist.] 2014). However, "the second element—that the insurer is liable for a claim under the insurance policy—is not satisfied as a matter of law if the insured does not *recover any judgment* based on the insurer's liability under the insurance policy." *Marchbanks v. Liberty Ins. Corp.*, No. 14-17-00004-CV, 2018 WL 4016931, at *4 (Tex. App. – Houston [14th Dist.] Aug. 23, 2018) (emphasis added). The rationale behind this holding is that:

> [A]n insurer's voluntary payment of the full amount owed based on an appraisal award does not mean that the insurer was liable under the insurance policy; this payment means only that the insurance company chose not to seek to set aside the appraisal award and not to assert any defenses to its liability to pay the amount owed under the policy based on the appraisal award. *If an insurer pays this full amount, the trial court will not thereafter be asked to determine whether the*

> *insurer is liable under the policy, and the insured will not recover a judgment for*
> *any amount under the policy to which an eighteen-percent interest rate might be*
> *applied.*

*Id.* (internal citations omitted) (emphasis added). Therefore, the "full and timely payment of an appraisal award under the policy precludes an award of penalties under the Insurance Code's prompt payment provisions as a matter of law." *Hurst*, 523 S.W.3d at 847. *See also Garcia*, 514 S.W.3d at 275 ("a long line of cases has held that full and timely payment of an appraisal award under the policy precludes an insured from recovering penalties under the Act as a matter of law"). Applying this rule, the Fifth Circuit recently concluded that "no Texas case has ever subjected such a[n appraisal award] payment to the [late payment penalties provided by] statute." *Mainali Corp. v. Covington Specialty Ins. Co.*, 872 F.3d 255, 258 (5th Cir. 2017); *see also Cano v. State Farm Lloyds*, 276 F. Supp. 3d 620, 628 (N.D. Tex. 2017) (rejecting homeowner plaintiff's claim for statutory damages based on delay in payment between initial payments and payment of appraisal award and granting summary judgment for insurer).

Plaintiff relies on two alternative cases to support his late payment claim. The first is *Higginbotham v. State Farm Mut. Auto. Ins. Co*., 103 F.3d 456, 461 (5th Cir. 1997), for the proposition that an "insurance company's good faith assertion of defense does not relieve the insurer of liability for penalties for tardy payment, as long as the insurer is finally judged liable." However, *Higginbotham* is distinguishable because appraisal was not utilized, instead payment was only given after the plaintiff secured a court judgment. *Id.* at 458. Plaintiff also cites *Graber v. State Farm Lloyds*, No. 3:13-CV-2671-B, 2015 WL 3755030, (N.D. Tex. June 15, 2015), a district court case, to support his late payment claim. But the Fifth Circuit critiqued this case by noting that "[t]he most fundamental problem with *Graber* is that it did not recognize an

16

Erie court's duty to follow state courts' interpretation of state law rather than the interpretation the federal court thinks makes the most sense." *Mainali*, 872 F.3d at 259.

As shown by the above cited cases, applying the late payment penalties to the appraisal award would be contrary to Texas law. *Hurst*, 523 S.W.3d at 847. Plaintiff fails to distinguish Liberty's voluntary payment of the appraisal award from when an insured recovers a judgment based on the insurer's liability under the insurance policy. As a matter of law, "[a] plaintiff may not seek Chapter 542 damages for any delay in payment between an initial payment and the insurer's timely payment of an appraisal award." *Quibodeaux v. Nautilus Ins. Co.*, 655 F. App'x 984, 988 (5th Cir. 2016). Because Plaintiff has no legally cognizable claim against Defendant under the Texas Prompt Payment of Claims Act for a delay between the initial payment and the payment of an appraisal award, Liberty is entitled to summary judgment.

## IV.    Recommendation

Defendant has shown that Plaintiff's claims have been resolved through timely payment of the agreed upon appraisal award. The insurance contract between the Parties is not in breach as a matter of law because Plaintiff received the benefits he was entitled to through the intra-contractual appraisal process. Plaintiff's extra-contractual claims fail because he alleged no injury independent from the loss of policy benefits as required by Texas law. Lastly, Plaintiff's claim for a late payment penalty is not legally cognizable because there is no court judgment upon which to base the statutory penalties. As such, the undersigned **RECOMMENDS** that the District Court, after an independent review of the record, find no genuine issue as to any material fact and **GRANT** Liberty's Motion for Summary Judgment. (Dkt. No. 16).

## V.     Warnings

The Parties may file objections to this Report and Recommendation, unless they waive the right to do so.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  *Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982) (en banc)).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after being served with a copy of the Report— or the party's waiver of the right to do so—shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations and, except upon grounds of plain error, shall bar the party from appellate review of proposed factual findings and legal conclusions accepted by the District Court to which no objections were filed.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn,* 474 U.S. 140, 150-53 (1985); *Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

The Clerk is directed to send a copy of this Report and Recommendation to all Parties.

Signed on November 29, 2018, at Laredo, Texas.

Diana Song Quiroga

DIANA SONG QUIROGA
UNITED STATES MAGISTRATE JUDGE